# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# NORTHERN DIVISION

**BRENDA K. MANLEY**                                                   **PLAINTIFF**

V.                      NO. 1:17CV00107-BRW-JTR

**NANCY A. BERRYHILL,**
**Deputy Commissioner for Operations,**
**performing the duties and functions not reserved**
**to the Commissioner of Social Security**                 **DEFENDANT**

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Billy Roy Wilson. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**I.**   **Introduction:**

Plaintiff, Brenda K. Manley, applied for disability benefits on March 24, 2014, alleging a disability onset date of October 20, 2013. (Tr. at 110). After conducting a hearing, the Administrative Law Judge ("ALJ") denied her application. (Tr. at 125). The Appeals Council denied her request for review. (Tr. at 1). Thus, the ALJ=s decision now stands as the final decision of the Commissioner.

For the reasons stated below, this Court should reverse the ALJ's decision and remand for further review.

## II. **The Commissioner=s Decision**:

The ALJ found that Manley had not engaged in substantial gainful activity since the alleged onset date of October 20, 2013. (Tr. at 112). At Step Two, the ALJ found that Manley has the following severe impairments: osteoarthritis, degenerative disc disease, anxiety disorder, and affective disorder. (Tr. at 113).

After finding that Manley's impairments did not meet or equal a listed impairment (Tr. at 114), the ALJ determined that Manley had the residual functional capacity (ARFC@) to perform the full range of sedentary work, except that: (1) she could only occasionally stoop and crouch; (2) she requires an assistive device to ambulate more than 30 feet from the work station; (3) she is able to perform work where the interpersonal contact is incidental to the work performed, with "incidental" defined as interpersonal contact requiring a limited degree of interaction, such as meeting and greeting the public, answering simple questions, accepting payment, and making change; (4) the complexity of tasks in the workplace must be learned by demonstration or repetition within 30 days, with few variables and little judgment; and (5) the supervision required is simple, direct, and concrete. (Tr. at 116).

The ALJ found that, based on Manley's RFC, Manley was unable to perform

any past relevant work. (Tr. at 123). However, relying upon the testimony of the Vocational Expert ("VE") at Step Five, the ALJ found that, based on Manley's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform, including positions as a merchandise marker and a mail clerk. (Tr. at 124).[1] Thus, the ALJ found that Manley was not disabled. *Id.*

III. **Discussion:**

    A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

---

[1] The ALJ defined these two jobs as being in the light category, but the RFC calls for sedentary work. This discrepancy will be discussed below.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

B.  Manley=s Arguments on Appeal

Manley contends that substantial evidence does not support the ALJ=s decision to deny benefits. She argues that the ALJ erred by not conducting the special technique required for evaluating an RFC for mental impairments. For the following reasons, the Court finds support for reversal.

Manley suffered from degenerative disc disease, but she limits her argument to problems arising from her mental impairments. She suffered physical and sexual abuse for years. She tried to commit suicide twice, according to treatment notes and her own hearing testimony. (Tr. at 136-137, 852). While Manley did not allege mental impairments on her initial application, she submitted records dating from October 2014 to January 2016 documenting regular counseling sessions. (Tr. at 737-911). Her diagnoses were major depression, PTSD, and Borderline Personality Disorder. (Tr. at 739, 863, 880, 895). She complained of panic attacks, temper

tantrums, flashbacks of abuse, impulse control, and social withdrawal. (Tr. at 850, 853, 861, 880, 889). Manley told her providers that she was prone to "cutting." (Tr. at 861). Medication improved symptoms. (Tr. at 861). Still, at the hearing she was visibly shaking from having a panic attack. (Tr. at 147).

Manley reported mental health problems on her function report in September 2014. (Tr. at 425-426). She did likewise on a function questionnaire in January 2016. (Tr. at 459). Her attorney listed her mental impairments in his opening statement at the hearing. (Tr. at 136-137). And Manley indicated that she had some difficulty performing activities of daily living, and was more inclined to stay in her bed most of the day. (Tr. at 148, 420-424). While Manley did not allege mental impairments on her initial application, there was ample evidence in the record to support her diagnoses. Moreover, the ALJ recognized her mental impairments by finding anxiety disorder and affective disorder to be severe impairments. (Tr. at 113).

Where mental impairments are presented, the Commissioner must follow a special technique to evaluate the severity of the impairments and resulting functional limitations. It is called the Psychiatric Review Technique, and it rates a claimant's degree of functional mental limitation in four broad areas: activities of daily living; social functioning; concentration, persistence and pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(b)(2), (c)(2)-(4), 416.920a(b)(2), (c)(2)-

(4); . The standardized PRT form is now used only at the initial and reconsideration levels; at the ALJ hearing and Appeals Council levels, documentation of the application of the PRT is in the decision itself, rather than on a separate form. 20 C.F.R. §§ 404.1520a(e), 416.920a(e) (2007). If a psychological examiner completed a form before the hearing and the ALJ discussed the technique within the decision, the ALJ has met the requirement for assessment of mental impairments. *Id.*; *Montgomery v. Shalala*, 30 F.3d 98, 100 (8th Cir. 1994).

The ALJ in this case did include a PRT analysis in his decision, but he did not first obtain a PRT opinion by a psychologist or psychiatrist. At the initial and reconsideration levels, no PRT was done. (Tr. at 161-222). And the ALJ did not reference any psychiatric opinion in his discussion of the opinions he relied on. (Tr. at 122-123). Where there is no PRT analysis at the first two levels of review, an ALJ must obtain a medical opinion on mental impairments. See 42 U.S.C. § 421(h); *Andrade v. Secretary of Health and Human Services*, 985 F.2d 1045, 1049 (10th Cir. 1993) (reversing because the administrative law judge did not ask a psychiatrist or psychologist to complete the PRT). An administrative law judge may not make an initial determination that the claimant is not disabled unless the administrative law judge "has made every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any

applicable residual functional capacity assessment." *Montgomery*, 30 F.3d 98 at 100. When there is not a PRT analysis at the initial or reconsideration level, an ALJ must further develop the record to include this special technique. *Id.*, *Nicola v. Astrue*, 480 F.3d 885, 887 (8th Cir.). Manley's mental health problems were not made apparent until after the initial review of her application, but the ALJ had sufficient notice of mental impairments before he made his decision. He should have sought a psychiatric opinion.

The hearing decision in this case also presented a conflict between the RFC and the VE testimony. The RFC provided for sedentary work. (Tr. at 116). The VE offered jobs at the light level that Manley could perform (Tr. at 156-157), and the ALJ listed those light jobs in his opinion (Tr. at 124). Thus, the RFC (sedentary) did not correspond to the jobs available (light). This constitutes reversible error.

V. **Conclusion:**

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The ALJ should have obtained a psychiatric medical opinion including a PRT, and he erred in his identification of jobs that Manley could perform.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and the case be REMANDED for further review.

DATED this 21st day of August, 2018.

_____
UNITED STATES MAGISTRATE JUDGE